FILE COPY

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROBERT O. DAVIS, III,              )
                                   )
          Appellant,               )
                                   )
     vs.                           )
                                   )
STATE OF ALASKA,                   )
                                   )
          Appellee.                )   Court of Appeals No. A-08308
_____  )
                                       Trial Court No. 3AN-S01-1717 CR

APPEAL FROM THE SUPERIOR COURT
THIRD JUDICIAL DISTRICT AT ANCHORAGE
THE HONORABLE DAN A. HENSLEY, PRESIDING

---

**VRA AND APP. R. 513.5 CERTIFICATION.** I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court. I further certify, pursuant to App. R. 513.5, that the font used in this document is Universal 12.5 point.

---

## BRIEF OF APPELLANT

ALASKA PUBLIC DEFENDER AGENCY

BARBARA K. BRINK (8206009)
Public Defender
900 West Fifth Avenue, Suite 200
Anchorage, Alaska 99501
(907) 334-4400

J. JAKE KETSCHER (9910054)
Assistant Public Defender
518 West Marine Way, Suite 201
Kodiak, Alaska 99615
(907) 486-8114

Filed in the Court of Appeals of
the State of Alaska, this _20th_ day
of _August_, 2003.

     Marilyn May, Clerk

By: _____
     Deputy Clerk

Exhibit A – 1

## TABLE OF CONTENTS

|                                          | Page(s) |
| ---------------------------------------- | ------- |
| TABLE OF CONTENTS                        | i       |
| TABLE OF AUTHORITIES                     | ii-iii  |
| AUTHORITIES RELIED UPON                  | iv-vi   |
| STATEMENT OF JURISDICTION                | 1       |
| ISSUES PRESENTED FOR REVIEW              | 2       |
| STANDARD OF REVIEW                       | 3-4     |
| FACTUAL AND PROCEDURAL BACKGROUND        | 5-14    |
| ARGUMENT                                 | 14-20   |
| CONCLUSION                               | 21      |

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

Adams v. State          .        .        .        .        .        .        .        3, 15
        598 P.2d 503 (Alaska 1979)

Alexander v. Anchorage          .        .        .        .        .        .        19
        490 P.2d 910 (Alaska 1971)

Baker v. Fairbanks          .        .        .        .        .        .        19
        471 P.2d 386 (Alaska 1970)

Beavers v. State          .        .        .        .        .        .        .        3, 15
        492 P.2d 88 (Alaska 1971)

Cano v. Municipality of Anchorage          .        .        .        .        20
        627 P.2d 660 (Alaska App. 1981)

Dorman v. State          .        .        .        .        .        .        .        3, 15
        622 P.2d 448 (Alaska 1981)

Guin v. Ha          .        .        .        .        .        .        .        4
        591 P.2d 1281 (Alaska 1979)

Langdon v. Champion          .        .        .        .        .        .        3
        752 P.2d 999 (Alaska 1988)

Lonis v. State          .        .        .        .        .        .        .        20
        998 P.2d 441 (Alaska App. 2000)

Martin v. City of Fairbanks          .        .        .        .        .        3, 15
        456 P.2d 462 (Alaska 1969)

McCurry v. State          .        .        .        .        .        .        .        3, 15
        538 P.2d 100 (Alaska 1975)

Ortberg v. State          .        .        .        .        .        .        .        20
        751 P.2d 1386 (Alaska App. 1988)

Siggelkow v. State          .        .        .        .        .        .        3, 15
        648 P.2d 611 (Alaska App. 1982)

Exhibit A – 3

**Cases Cont.**                                                      **Page(s)**

Willoya v. State, Department of Corrections     .     .     .     18, 19
      53 P.3d 1115 (Alaska 2002)

**Statutes**

AS 11.71.030     .     .     .     .     .     .     .     .     14

AS 11.71.150(c)          .     .     .     .     .     .     .     14

AS 22.07.020     .     .     .     .     .     .     .     .     1

**Rules**

Alaska Constitution Article 1, Section 7     .     .     .     .     18

Alaska Constitution Article 1, Section 11     .     .     .     .     16, 18, 19

Alaska Criminal Rule 39          .     .     .     .     .     .     19

Alaska Criminal Rule 53          .     .     .     .     .     .     20

Alaska Rule of Criminal Procedure 38.1     .     .     .     .     17

Alaska Rules of Appellate Procedure 217     .     .     .     .     1

United States Constitution, Fourth Amendment     .     .     .     18

United States Constitution, Fifth Amendment          .     .     18

United States Constitution, Sixth Amendment          .     .     16, 18

United States Constitution, Fourteenth Amendment     .     18

## AUTHORITIES RELIED UPON

<u>Statutes</u>

*AS 11.71.030*

   (a)   Except as authorized in AS 17.30, a person commits the crime of misconduct involving a controlled substance in the third degree if the person

     (1)   under circumstances not proscribed under AS 11.71.020(a)(2) - (4), manufactures or delivers any amount of a schedule IIA or IIIA controlled substance or possesses any amount of a schedule IIA or IIIA controlled substance with intent to manufacture or deliver;

     (2)   delivers any amount of a schedule IVA, VA, or VIA controlled substance to a person under 19 years of age who is at least three years younger than the person delivering the substance; or

     (3)   possesses any amount of a schedule IA or IIA controlled substance

       (A)   with reckless disregard that the possession occurs

         (i)   on or within 500 feet of school grounds; or

         (ii)   at or within 500 feet of a recreation or youth center; or

       (B)   on a school bus.

   (b)   It is an affirmative defense to a prosecution under (a)(3)(A) of this section that the prohibited conduct took place entirely within a private residence located within 500 feet of the school grounds or recreation or youth center, and that the prohibited conduct did not involve distributing, dispensing, or possessing with the intent to distribute or dispense a controlled substance for profit.  Nothing in this subsection precludes a prosecution under any other provision of this section or any other section of this chapter.

   (c)   Misconduct involving a controlled substance in the third degree is a class B felony.

*Alaska Constitution Article 1, Section 7*

No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

*Alaska Constitution Article 1, Section 11*

In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

*Alaska Criminal Rule 53*

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

*Alaska Rule of Criminal Procedure 38.1*

(a)    In any proceeding at which the defendant's presence is required under Criminal Rule 38(a), as modified by Rule 38.2, the defendant may waive the right to be present and request to participate by telephone. The defendant's waiver of the right to be physically present may be obtained orally on the record or in writing. The court may allow telephonic participation of one or more parties, counsel or the judge at any proceeding in its discretion. The court may allow telephonic participation of witnesses at bail hearings, omnibus hearings, probation revocation hearings or at trial with the consent of the prosecution and the defendant. The court may allow telephonic participation of witnesses at other hearings in its discretion.

(b)    The provisions of AS 12.35.015 shall govern the issuance of search warrants by telephone.

(c)    The provisions of Criminal Rule 6(u) govern telephonic participation in grand jury proceedings.

Exhibit A – 7

## STATEMENT OF JURISDICTION

Appellant, Robert O. Davis, III, appeals from the judgment of the Superior Court in Anchorage, Alaska, Third Judicial District entered on April 17, 2002, by the Honorable Dan A. Hensley, Superior Court Judge.

This Court has jurisdiction over this criminal merit appeal pursuant to AS 22.07.020(c). This appeal is brought as a matter of right pursuant to Alaska Rule of Appellate Procedure 217.

## ISSUES PRESENTED FOR REVIEW

1.     Whether the Superior Court erred when it denied the Appellant's motion for a judgment of acquittal after the State had failed to prove each element of the offenses beyond a reasonable doubt.

2.     Whether the Superior Court erred when it denied the Appellant the ability to call Nome Police Officer Bennett and allow him to testify telephonically.

3.     Whether the Superior Court erred when it denied the Appellant's request that it, or the State of Alaska, assist him in paying for the transportation costs of Nome Police Officer Bennett to come to Anchorage to testify on his behalf.

Exhibit A – 9

## STANDARD OF REVIEW

The standard of review to be applied to a denial of a motion for acquittal is whether fair-minded persons could reasonably differ on whether guilt has been established beyond a reasonable doubt. In applying this standard, a trial court must view the evidence and the inferences to be drawn in the light most favorable to the State. Adams v. State, 598 P.2d 503, 509 n.8 (Alaska 1979). See also, McCurry v. State, 538 P.2d 100, 101 (Alaska 1975) and Beavers v. State, 492 P.2d 88, 97-98 (Alaska 1971).

The same standard applies to review by an appellate court. Siggelkow v. State, 648 P.2d 611, 613 (Alaska App. 1982).

To determine whether the evidence was sufficient to convict the Appellant, this Court must consider the evidence presented at trial and all of the inferences arising therefrom in the light most favorable to the State. Dorman v. State, 622 P.2d 448, 453 (Alaska 1981). This Court must determine "whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was not reasonable doubt as to [the appellant's] guilt." Dorman v. State, supra, citing Martin v. City of Fairbanks, 456 P.2d 462, 464-65 (Alaska 1969).

The standard of review for evaluating the evidentiary issues and legal rulings in this case is a question of law upon which this Court will rule de novo. Langdon v. Champion, 752 P.2d 999, 1001 (Alaska 1988). The Court adopts

"the rule of law that is the most persuasive in the light of precedent, reason, and policy." <u>Guin v. Ha</u>, 591 P.2d 1281, 1284 n.6 (Alaska 1979).

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Davis was tried for four counts of misconduct involving a controlled substance in the third degree. Trial began on November 13, 2001 and ended on November 20 of the same year. The jury found Mr. Davis guilty of all four counts. During the trial the State called eleven witnesses and the defense called five.

The State's first witness was Anchorage Police Department Officer Kathleen Bushue who testified that she had been assigned to work surveillance at multiple undercover drug buys being carried out with a confidential informant named Jeremy Fish. (Exc. 12; T. 50). Officer Bushue testified that she was involved in two drug buys that occurred at 202 Grand Larry in Anchorage. The first buy took place on the evening of February 8, 2001 with Officer Bushue testifying that she, being assigned surveillance duty, heard on the radio that Mr. Fish was in the area and that he was coming out of the house. She then followed Mr. Fish's vehicle back to the police station. (Exc. 12; T. 50). Officer Bushue never saw the confidential informant (Mr. Fish) enter or leave the residence. (Exc. 15; T. 79). Once at the police station Officer Bushue testified that she performed a field test on the drugs that were given to her by another officer, one Johnstone. The field test she performed tested positive for cocaine. (Exc. 12; T. 50-52). Officer Bushue further testified that the drug buy of February 20, 2001 followed the same pattern as the February 8th, with Officer Bushue assigned to surveillance and then field testing the drug and finding a

positive result for cocaine.   (Exc. 13; T. 54-55).   Officer Bushue also participated in two other drug buys involving Mr. Fish, occurring on February 21 and 28 of 2001.  According to Officer Bushue's testimony, the February 21, 2001 buy took place in a Chevron parking lot where the informant met with an individual in a green Suburban.  Officer Bushue followed the Suburban to 202 Grand Larry.  (Exc. 13; T. 55-56).   On February 28, 2001 Officer Bushue watched the informant pull into a parking lot next to a pickup truck, enter the pickup and then exit.   Shortly after the informant exited the truck a police officer in a patrol vehicle entered the parking lot, took Mr. Davis out of the pickup and arrested him. (Exc. 14; T. 58-59).

James Triplett, the State's second witness, was also a member of the Anchorage Police Department, but he had not been involved in any drug investigation, rather he had been investigating a vehicle theft where Jeremy Fish, the State's confidential informant, had been a suspect.  Officer Triplett testified that while Mr. Fish had originally been a suspect in a vehicle theft case, further investigation revealed that Mr. Fish had not been involved.  (Exc. 16; T. 102-103).

The State returned to discussing the controlled buys with its third witness, Anchorage Police Officer Steven Haas.   Officer Haas, like Officer Bushue, had been assigned to do surveillance during the first three buys. Officer Haas also helped prepare for the controlled buy on February 8, 2001 by photocopying the money that the police department provided the informant in order to purchase drugs.  (Exc. 17; T. 112).  Officer Haas also searched Mr.

6

Exhibit A – 11

Fish's car before and after the buy on February 20, 2001. (Exc. 18; T. 117-118).

Anchorage Police Officer Grant Johnstone was the State's fourth witness. His testimony was much longer and more involved than that of Officer Haas because he was being trained by Officer LaPorte to be the case officer assigned to any drug buys accomplished with confidential informant Jeremy Fish.   On February 8, 2001, Mr. Fish, in Officer Johnstone's presence, called an individual named Rico at 727-9465.   Based on the one-sided conversation that Officer Johnstone heard, he believed that Mr. Fish was going to be purchasing cocaine from Rico for $150 at 202 Grand Larry. (Exc. 19; T. 137-138).   After hearing this conversation, Officer Johnstone started the necessary preparations required for a controlled buy.  He strip-searched Mr. Fish, asked Officer Haas to prepare the buy money, gave Mr. Fish the buy money and then followed Mr. Fish's vehicle until it turned onto Grand Larry. (Exc. 19; T. 138-140).   After Mr. Fish left 202 Grand Larry, Officer Johnstone met him a few blocks away at a parking lot and retrieved the drugs from him. (Exc. 20; T. 141).   Mr. Fish and Officer Johnstone then went back to the police station where Officer Johnstone performed a post-buy strip-search on Mr. Fish. (Exc. 20; T. 141).   On February 20, 2001, Officer Johnstone listened to Mr. Fish make phone calls to Rico and, after a buy had been arranged, strip-searched him, attached a recording device to him, searched his car, gave him the buy money and then followed his vehicle to the buy site. (Exc. 20-21; T. 144-146).   Through the recording device Officer Johnstone could hear Mr. Fish and the other people in 202 Grand Larry. (Exc.

21; T. 147). After Mr. Fish left the suspect's home and returned to the police station he gave Officer Johnstone some cocaine and was then given the post-buy strip-search and debriefing. (Exc. 21; T. 147-148). Officer Johnstone had discovered that the number Jeremy Fish called was a cell phone number owned by Robert Davis and that the phone company's address for Robert Davis was 202 Grand Larry. (Exc. 20; T. 143). The third controlled buy performed with Mr. Fish occurred on the night of February 21, 2001 in a Chevron parking lot. (Exc. 22; T. 150-151). Officer Johnstone carried out all the pre-buy tasks with Mr. Fish and then observed the buy from a location across the road from the Chevron station. (Exc. 22; T. 151). Jeremy Fish pulled into the parking lot, got out of his car and entered a Suburban. He then exited the Suburban, got in his vehicle, and drove back to the police station where the police performed the post-buy search on his person and vehicle and also debriefed him. (Exc. 22; T. 152). The last buy that Mr. Fish made with Mr. Davis occurred on the night of February 28, 2001. This buy took place in a different parking lot. (Exc. 23; T. 154). After Mr. Fish had telephonically arranged the buy, Officer Johnstone prepared the buy money, strip-searched and placed a recording device on Mr. Fish and then followed him to the designated buy site. Officer Johnstone followed Mr. Fish back to the police station after Mr. Fish completed his buy and then performed the post-buy searches and debriefing. (Exc. 23-24; T. 156-158).

Officer Johnstone had further involvement with Mr. Davis' case when it became apparent on March 2, 2001 that the police had not recovered the buy money from Mr. Davis' person or vehicle after arresting him immediately

following the controlled buy with Mr. Fish on February 28, 2001. (Exc. 24; T. 158). Since they could not find this buy money, Officer Johnstone applied for a search warrant to go through the cash drawer at the Cook Inlet Pretrial Facility where the corrections officers place all the money found on the suspect's person in one central fund. (Exc. 24; T. 159).

When Officer Johnstone stepped down, counsel and the Court took up the defense's request to call witnesses telephonically. (Exc. 25; T. 224). Specifically, the defense wanted to call a police officer from Nome to testify as to Jeremy Fish's veracity and allow a Cook Inlet Pretrial Facility booking officer to call from home due to an injury. (Exc. 25; T. 225). The State objected to allowing the Nome police officer to testify telephonically and the Court, citing Alaska Criminal Rule 38.1, denied the defense's request to allow the Nome officer to testify telephonically. (Exc. 26; T. 227). The Court held off on making a ruling regarding the Cook Inlet Pretrial Facility officer. (Exc. 26; T. 227).

The State's fifth witness was Cam Lampman, a records custodian for the cell phone company who testified that 727-9465 was a phone number registered to Robert Davis. (Exc. 26-27; T. 229-230).

After Ms. Lampman, the State called its sixth witness, the confidential informant Jeremy Fish, to the stand. After the defense attorney, Mr. James, subjected Mr. Fish to voir dire examination, the jury was brought back in and the trial proceeded with direct examination of Mr. Fish. (Exc. 28-30; T. 236-245). The Assistant District Attorney took Mr. Fish through the pre-buy

process and the events of the first drug buy on February 8, 2001. (Exc. 31; T. 255-257). The State then played some recordings in court and discussed them with Mr. Fish. Mr. Fish testified that the recordings were of his conversations with Mr. Davis and that they discussed setting up meetings to buy cocaine, the price of the cocaine and, finally, the tapes reproduce what was said during the drug buys. (Exc. 32-35; T. 265-277). On cross-examination the defendant's attorney attempted to attack Mr. Fish's credibility by bringing up his past. (Exc. 36-50; T. 298-355).

After the lengthy cross-examination of Jeremy Fish, the State called Somerset Jones, its seventh witness, to the stand. Officer Jones, a member of the Anchorage Police Department, testified that he had been assigned to conduct surveillance and assist in arresting Mr. Davis after the controlled buy was complete. (Exc. 51; T. 444). Officer Jones assisted Officer LeBlanc in making the arrest and later searched Mr. Davis' vehicle at an indoor police facility where he found a cell phone. (Exc. 51-52; T. 446-449).

The State's eighth witness, Anchorage Police Officer Mark LaPorte testified regarding the deal that Mr. Fish made through his attorney to be an informant, the process of using informants to carry out controlled buys, his observations and actions throughout the four buys involving Mr. Fish and Mr. Davis, and the issue regarding the search for the pre-recorded buy money. (Exc. 53-63; T. 473-474, 477-514). When Mr. Davis was arrested the police did not find the buy money they had given Mr. Fish in Davis' car. (Exc. 62; T. 511). Officer LaPorte determined that Mr. Davis had entered the Cook Inlet

Pretrial Facility with $180 and that the facility pooled all the money taken off suspects in a general fund. (Exc. 63; T. 512). On March 2, 2001 Officer LaPorte went to Cook Inlet Pretrial Facility with a search warrant and searched the general fund for the bills provided to Mr. Fish as buy money on February 28, 2001. (Exc. 63; T. 514). Officer LaPorte was able to find one of the six bills given to Mr. Fish. (Id.).

Near the end of the day on November 19, 2001, the Court took up the issues of jury instructions, the defense's request for the State to pay to transport a witness, and the defense's renewed request to allow the Cook Inlet Pretrial Facility booking officer, Mr. Garcia, to testify telephonically. (Exc. 64-66; T. 545, 563, 567). After taking care of jury instructions, the Court turned to the defense's two requests. The Court denied the Defendant's motion to order the State to pay to transport a witness on grounds that if the Defendant has obtained his own counsel then he cannot obtain financial assistance from the State. The Court read the statute providing counsel for indigents as not allowing a "hybrid kind" of representation where the State pays some aspects of the defense but not all. (Exc. 65; T. 563). The defense's request to allow Mr. Garcia to testify telephonically was then discussed, with the Assistant District Attorney saying she would probably not object to the request, but that she needed more time to check into this matter. (Exc. 66; T. 567). The Court held off on making a decision on that issue. (Exc. 67; T. 570).

The Assistant District Attorney, Ms. Brady, then called Ted Garcia, the State's ninth witness and the booking officer at Cook Inlet Pretrial Facility who

had processed Mr. Davis. (Exc. 68; T. 600-601). Ms. Brady questioned him about the booking procedure and asked if Mr. Davis had any money on him when he was brought into the facility. Mr. Garcia replied yes, $180 and that this money would have been in the till with everyone else's money. (Exc. 69; T. 605-606).

The State's tenth witness was Officer Roy LeBlanc, an Anchorage Police Officer, who searched Mr. Fish's car before and after the February 8, 2001 buy and, while on surveillance on both the eighth and twentieth of February 2001, saw Mr. Fish enter and leave 202 Grand Larry. (Exc. 70-71; T. 618, 622). On February 28, 2001, Officer LeBlanc was the uniformed officer that arrested Mr. Davis after Mr. Fish had allegedly finished buying drugs from him. (Exc. 72; T. 631).

The eleventh and final witness called by the State was Jack Hurd, a state crime lab criminalist, who had examined and tested the suspected drugs obtained from Mr. Fish that allegedly came from Mr. Davis. (Exc. 73; T. 677). Mr. Hurd described the process that a suspected drug substance was subjected to in the crime lab. (Exc. 73-76; T. 678-688). Mr. Hurd then testified that all of the samples submitted by the Anchorage Police Department in Mr. Davis' case tested positive for cocaine. (Exc. 74-76; T. 681-688).

The State then rested its case. (Exc. 77; T. 698).

The defense's first witness, Darryl Cash, testified that he was in Mr. Davis' residence, 202 Grand Larry, on February 20, 2001 from eight (8:00) in the evening until midnight (12:00) and that he never saw any drugs or guns in

the house, nor did he see Mr. Davis deal drugs to anyone on that night. (Exc. 78-80; T. 701-707).

The defense's second witness Brandon May, testified that he was at 202 Grand Larry on the evening of February 20, 2001 and that he did not see any drugs or guns in the home. (Exc. 81; T. 720-721).

Mildred Healy, a Department of Corrections records officer was then called by the defense. (Exc. 82; T. 735-736). She testified as to Mr. Davis' records at the Cook Inlet Pretrial Facility. (Exc. 82-84; T. 736-743).

The defense's fourth witness was Athena Soder, the mother of Jeremy Fish's daughter. (Exc. 84; T. 744-745). She testified as to Jeremy Fish's drug use. (Exc. 85; T. 748-750).

The last witness called by the defense was Buena Epeagba, Robert Davis' mother. She testified that her son was a mechanic, that she owns a Suburban with tinted windows and that she has never seen her son with a gun. (Exc. 86; T. 757-758).

After all witnesses had testified, the Court and counsel went over a few other jury instructions and the defense's motion for a judgment of acquittal. (Exc. 87-88; T. 766-770). The motion for a judgment of acquittal was based on the testimony of Jeremy Fish. (Exc. 87; T. 766). According to the defense attorney, the "case rises or falls on Jeremy Fish" and cross-examination had established that "Jeremy Fish is a complete liar". (Exc. 87; T. 766). Because of this, the defense attorney did not think that "reasonable minds [could] differ that he [Fish] is a liar and he's totally unbelievable". (Exc. 87; T. 766). Judge

Hensley denied the motion on the grounds that reasonable minds could differ over whether the State had presented sufficient evidence and that the State had presented enough evidence "to get past the motion for judgment of acquittal". (Exc. 88; T. 767).

## ARGUMENT

A.   <u>The Superior Court Erred When It Denied The Appellant's Motion For A Judgment Of Acquittal After The State Had Failed To Prove Each Element Of The Offenses Beyond A Reasonable Doubt.</u>

Pursuant to AS 11.71.030(a)(1):

(a)   Except as authorized in AS 17.30, a person commits the crime of misconduct involving a controlled substance in the third degree if the person

(1)   under circumstances not proscribed under AS 11.71.020(a)(2)--(4), manufactures or delivers any amount of a schedule IIA or IIIA controlled substance or possesses any amount of a schedule IIA or IIIA controlled substance with intent to manufacture or deliver;

These crimes are class B felonies. AS 11.71.030.

Cocaine is a schedule IIA controlled substance. AS 11.71.150(c).

In order for the State of Alaska to convict Mr. Davis of these crimes, it had to prove beyond a reasonable doubt that Mr. Davis knowingly delivered cocaine or possessed cocaine with intent to distribute.

The State failed to prove each element of the offenses of Misconduct Involving a Controlled Substance in the Third Degree. Because of this, the Superior Court should have granted Mr. Davis' motion for a judgment of acquittal. (Exc. 87; T. 766).

The standard of review to be applied to a denial of a motion for acquittal is whether fair-minded persons could reasonably differ on whether guilt has been established beyond a reasonable doubt. In applying this standard, a trial court must view the evidence and the inferences to be drawn in the light most favorable to the State. Adams v. State, 598 P.2d 503, 509 n.8 (Alaska 1979). See also, McCurry v. State, 538 P.2d 100, 101 (Alaska 1975) and Beavers v. State, 492 P.2d 88, 97-98 (Alaska 1971).

The same standard applies to review by an appellate court. Siggelkow v. State, 648 P.2d 611, 613 (Alaska App. 1982).

To determine whether the evidence was sufficient to convict the Appellant, this Court must consider the evidence presented at trial and all of the inferences arising therefrom in the light most favorable to the State. Dorman v. State, 622 P.2d 448, 453 (Alaska 1981). This Court must determine "whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was not reasonable doubt as to [the appellant's] guilt." Dorman v. State, supra, citing Martin v. City of Fairbanks, 456 P.2d 462, 464-65 (Alaska 1969).

None of the police officers testified that they saw Mr. Davis with cocaine, or any other drugs. The State's entire case rests upon the testimony of Mr. Jeremy Fish. Mr. Fish is the only witness that testified that he saw Mr. Davis with cocaine. Without Mr. Fish's testimony, the State has no case against Mr. Davis.

Athena Soder, the mother of Mr. Fish's daughter, testified as to his poor character and drug use. (Exc. 84; T. 744-745).

Defense witnesses Darryl Cash and Brandon May testified that they were present with Mr. Davis on the evening of February 20, 2001 and that they did not see any drugs.

Even though the evidence, and all inferences, must be viewed by this Court in the light most favorable to the State of Alaska, no reasonable jury could have concluded that Mr. Fish was telling the truth. As counsel for Mr. Davis pointed out to the Superior Court it is not possible that "reasonable minds [could] differ that he [Fish] is a liar and he's totally unbelievable". (Exc. 87; T. 766).

The Superior Court should have granted Mr. Davis motion for a judgment of acquittal. This Court must find that the State of Alaska did not prove its case and reverse the judgments against Mr. Davis.

While credibility of witnesses is normally left to the sole discretion of the finders of fact, which in this case was the jury, a reasonable jury could not have determined that Mr. Fish was telling the truth and that Mr. Davis is guilty.

B.   <u>The Superior Court Erred When It Denied The Appellant The Ability To Call Nome Police Officer Bennett And Allow Him To Testify Telephonically.</u>

In criminal trials, the accused has the right to have compulsory process for obtaining witnesses in his favor. Alaska Constitution Article 1, Section 11. See also United States Constitution, Sixth Amendment.

Alaska is a large state. Transportation costs are prohibitive. Nome is geographically isolated from Anchorage where Mr. Davis' trial was held. The Court should have allowed Mr. Davis to call Nome Police Officer Bennett and have him testify via telephone. Provided that the parties have no objection, the Court was permitted to allow witnesses to testify via telephone. Alaska Rule of Criminal Procedure 38.1.

As discussed in the last argument, the credibility of Mr. Jeremy Fish is crucial to the State of Alaska's case against Mr. Davis. Mr. Davis had the right to call witnesses to call Mr. Fish's credibility into question.

Officer Bennett's testimony was crucial for Mr. Davis' defense. Officer Bennett was a character witness. Mr. Davis intended to use Officer Bennett's testimony to impeach the testimony of Jeremy Fish, the informant in this case. Jeremy Fish was one of the State's primary witnesses, and the only witness who testified that he actually saw Mr. Davis possess drugs. Without Mr. Fish's testimony, the State would not have had even a *prima facie* case against Mr. Davis. Further evidence of Mr. Fish's poor character was necessary for the jury, the finders of fact, to make an adequate determination of Mr. Fish's lack of credibility.

Even though the State of Alaska objected to Officer Bennett's telephonic testimony, Mr. Davis' constitutional right to call witnesses carries more weight than the State of Alaska's ability to object to the Alaska Criminal Rules.

C.    The Superior Court Erred When It Denied The Appellant's Request That It, Or The State Of Alaska, Assist Him In Paying For The Transportation Costs Of Nome Police Officer Bennett To Come To Anchorage To Testify On His Behalf.

In criminal trials, the accused has the right to assistance of counsel, as well as the right to compulsory process. Alaska Constitution Article 1, Section 11. See also United States Constitution, Sixth Amendment as made applicable to the State of Alaska via the Fourteenth Amendment.

When the Superior Court denied Mr. Davis' motion to allow Officer Bennett to testify telephonically, it incurred the obligation of assisting Mr. Davis in making arrangements for Officer Bennett to fly to Anchorage to take part in the trial in person.

In denying Mr. Davis' request to assist him in flying Officer Bennett from Nome to Anchorage to testify regarding the credibility of the State's star witness, the Trial Court erred in a manner that infringed upon Mr. Davis' state and federal constitutional rights. Mr. Davis had his Fourth and Fifth Amendment federal constitutional rights, as applied to the State of Alaska through the Fourteenth Amendment, violated. Also, his state rights under Article 1, Sections 7 and 11 of the Constitution of Alaska were violated when the trial court denied his right for assistance. These provisions protect the right of an accused to call witnesses in his favor.

While the Alaska Supreme Court has recently held that the courts do not have to provide indigent defendants with expert witnesses in civil trials, See Willoya v. State, Department of Corrections, 53 P.3d 1115, 1122 (Alaska

2002), criminal trials are an entirely different matter. The number of constitutional rights involved and the potential for a man's liberty to be taken away require courts and the state to provide much more assistance than would ever be granted in a civil case. Indigent clients have long been granted assistance in obtaining counsel, See Alexander v. Anchorage, 490 P.2d 910 (Alaska 1971), Baker v. Fairbanks, 471 P.2d 386 (Alaska 1970), and by analogy, defendants should be assisted in bringing witnesses to testify on their behalf in criminal trials.

By refusing to assist Mr. Davis, the Trial Court unfairly hampered his attempt to defend himself against serious criminal charges.

The poor and economically disadvantaged are not to receive inferior legal representation. See Article 1, Section 11 of the Alaska Constitution. See also Alaska Criminal Rule 39.

Although Mr. Davis had a privately retained attorney at the time of trial, his resources were not infinite. Had Mr. Davis had court appointed counsel, the State of Alaska, through his appointed counsel, would have provided the resources to secure Officer Bennett's testimony. The fact that Mr. Davis had privately retained counsel did not absolve the Court of the necessity to insure that he had adequate representation, including the ability to obtain witnesses on his behalf.

The Superior Court misread the statute providing counsel for indigents as not allowing a "hybrid kind" of representation where the State pays some aspects of the defense but not all. (Exc. 65; T. 563). It is acknowledged that

Alaskan trial courts have "broad discretion to deny hybrid representation or co-counsel status." Ortberg v. State, 751 P.2d 1386, 1375 (Alaska App. 1988). Notice the language in Ortberg doesn't preclude hybrid representation, it gave the courts discretion in limiting it.   The Superior Court should have considered "the alternatives available to it and chosen among them." Cano v. Municipality of Anchorage, 627 P.2d 660, 663 (Alaska App. 1981). See also Lonis v. State, 998 P.2d 441, 447 (Alaska App. 2000).  The Superior Court could also have chosen to allow some form of hybrid representation after relaxing the rules as allowed by Alaska Criminal Rule 53, which states "[t]hese rules are designed to facilitate business and advance justice.  They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."  In this present case, the Superior Court should have explored, and allowed, some form of hybrid representation so that the jury would have all the information it needed in order to accurately decide if Mr. Davis was innocent or guilty of the crimes he was charged with.  The Superior Court's blanket denial of hybrid representation led the jury to make an uninformed decision regarding its verdict.  The Superior Court erred when it claimed to have had no discretion in giving aid to Mr. Davis.

The Superior Court erred when it refused to aid Mr. Davis in securing the personal presence of Officer Bennett, especially after it had ruled that Officer Bennett could not testify telephonically.

## CONCLUSION

The jury acted unreasonably when it chose to believe Mr. Fish, an obviously dishonest witness. A reasonable jury could not have believed his testimony and convicted Mr. Davis. The Superior Court erred when it did not grant Mr. Davis' motion for a judgment of acquittal.

The Superior Court also erred when it denied hybrid representation and refused to assist Mr. Davis in obtaining a witness in his favor, who would have been able to further call Mr. Fish's testimony into question. The expense of calling Officer Bennett was required because the State of Alaska chose not to stipulate that Mr. Davis could call him to testify telephonically.

The law of Alaska and the interest of justice requires this Court to reverse the convictions against Mr. Davis.

RESPECTFULLY SUBMITTED this 20 day of August 2003 at Kodiak, Alaska.

ALASKA PUBLIC DEFENDER AGENCY

J. Jake Ketscher
Assistant Public Defender
Bar No. 9910054