NOTICE

*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3). Accordingly, this memorandum decision may not be cited as binding precedent for any proposition of law.*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ROBERT O. DAVIS III, | ) |
| | ) Court of Appeals No. A-8308 |
| Appellant, | ) Trial Court No. 3AN-01-1717 Cr |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| STATE OF ALASKA, | ) AND JUDGMENT |
| | ) |
| Appellee. | ) [No. 4899 — August 4, 2004] |

Appeal from the Superior Court, Third Judicial District, Anchorage, Dan A. Hensley, Judge.

Appearances: David D. Reineke, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant. Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: Coats, Chief Judge, and Mannheimer and Stewart, Judges.

STEWART, Judge.

A jury convicted Robert O. Davis III of four counts of third-degree misconduct involving a controlled substance[1] for selling cocaine to an informant. Davis claims that the superior court should have granted his motion for judgment of acquittal. But we reject that claim because, viewing the evidence in the light most favorable to the

---

[1] AS 11.71.030(a)(1).

State, reasonable jurors could conclude that the State had proven its case. Davis also argues that the superior court erred by not permitting a witness to testify by telephone or, alternatively, that the court erred by not granting Davis's motion for the court or the State to pay for that witness's travel to Anchorage so the witness could testify in person. We conclude that the superior court did not err when it denied these requests. Therefore, we affirm Davis's convictions.

### *Background facts and proceedings*

In January of 2001, Nome police arrested Jeremy Fish for first-degree burglary[2] after Fish entered a Nome residence to steal some money. The police asked Fish whether he knew anyone who sold drugs in Nome. Fish lied and said that he did. An officer told Fish that he would recommend that the district attorney's office treat Fish with leniency if Fish made some controlled drug buys for the Nome police. Fish agreed to cooperate, but he and his girlfriend fled Nome for Anchorage before Fish made any buys. A bench warrant was subsequently issued for Fish's arrest on the burglary charge.

After arriving in Anchorage, Fish's girlfriend called the hospital she had worked at in Nome to obtain a reference for a job in Anchorage. The Nome hospital gave Fish's girlfriend's phone number to the police. The police then contacted Fish and his girlfriend and warned them that they were planning to arrest Fish's girlfriend as an accomplice and to place the couple's infant daughter in foster care. Fish then went to an Anchorage police station and turned himself in so that police would not arrest his girlfriend.

Fish met with several officers at the police station and told them about the agreement that he had entered into with the Nome police. He asked the officers whether

---

[2] AS 11.46.300(a)(1).

he could have "the same deal" that he had been given in Nome. The officers told Fish that they would talk to the district attorney. One of the officers gave Fish some phone numbers and instructed him to telephone police the next day.

Fish was arraigned on the burglary charge the next day and was released on his own recognizance. Fish contacted the police and met with two more police officers, Officer Mark LaPorte and Officer Grant Johnstone. Fish told the officers that he knew people in Anchorage who sold cocaine. Officers LaPorte and Johnstone told Fish that they would arrange for the Nome burglary charge to be dismissed if Fish would agree to work as a police informant. Fish then called Davis and arranged to go to Davis's house to purchase cocaine.

The police searched both Fish and his vehicle to ensure that Fish did not have any drugs with him. After the searches, the police gave Fish $150 in buy money, which had been copied and recorded for tracking purposes. Fish drove to Davis's house in his own vehicle. Officers LaPorte and Johnstone followed Fish in an unmarked patrol car. Other officers were also parked in the area near Davis's home and watched as Fish entered Davis's house.

After Fish had left Davis's house, Officers LaPorte and Johnstone followed him to the parking lot of a nearby church. In the parking lot, the officers recovered cocaine from Fish. Fish and the officers then returned to the police station, where the officers again searched Fish and his car and then "debrief[ed]" him about the buy. A field test verified that the substance purchased was cocaine.

Fish bought cocaine from Davis three other times. Before each buy, the police searched Fish and his vehicle. The police obtained a *Glass* warrant,[3] and recorded

---

[3] *State v. Glass*, 583 P.2d 872 (Alaska 1978), *on reh'g*, 596 P.2d 10 (Alaska 1979) (holding that the Alaska Constitution requires police to obtain judicial authorization before secretly recording a person's private conversations).

each of the telephone calls that Fish made to set up these three later buys. The police also "wired" Fish for these three buys and recorded Fish's contact with Davis. During each of the buys, the police maintained surveillance of Fish. After each buy, the police searched Fish and his vehicle. The police arrested Davis immediately after the fourth and final buy.

The grand jury indicted Davis on four counts of third-degree misconduct involving a controlled substance.

### *Were Davis's convictions supported by sufficient evidence?*

When we consider whether the State presented sufficient evidence to support a conviction, we must view the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the State.[4] We must uphold the verdict if fair-minded jurors exercising reasonable judgment could find the defendant guilty beyond a reasonable doubt.[5]

Fish testified that he had bought cocaine four times from Davis. Fish turned the cocaine over to the police, and testing confirmed that it was cocaine. The police testified that Fish and his vehicle were searched before and after each buy and that Fish's contact with Davis was monitored. Fish delivered the cocaine to the police. Fish's conversations with Davis during the buys were electronically monitored and recorded. The recordings were played for the jury.

Davis argues that because Fish was unreliable and because no other witness testified to seeing Davis in possession of cocaine, the superior court should have entered a judgment of acquittal on all counts. Even though Davis presented substantial evidence

---

[4] *Shafer v. State*, 456 P.2d 466, 469 (Alaska 1969); *Simpson v. State*, 877 P.2d 1319, 1320 (Alaska App. 1994).

[5] *See Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981).

that undercut Fish's credibility, we conclude, after viewing all the evidence in the record in the light most favorable to the State, that there was sufficient evidence to sustain Davis's convictions.

*Should Davis have been permitted to present a witness by telephone?*

Davis argues that Judge Hensley erred by denying his request to permit Nome Police Officer Dan Bennett to testify by telephone during the trial. Alaska Rule of Criminal Procedure 38.1(a) provides, in part, that "[t]he court may allow telephonic participation of witnesses ... at trial with the consent of the prosecution and the defendant."[6]

The record shows that the court had discussed this issue before Fish testified. Davis told the court that he did not know how Fish would testify, and that he might want to call Officer Bennett if Fish denied that he had an agreement with the Nome police and had lied to them. The prosecutor objected to telephonic testimony. Because Rule 38.1 requires both parties to consent to telephonic testimony and because the State did not consent, Judge Hensley denied the application for telephonic testimony. Judge Hensley also found that there were no exceptional circumstances that would warrant relaxing the rule.

On appeal, Davis argues that he was denied his constitutional right to compulsory process for obtaining witnesses in his favor when Judge Hensley denied the request for telephonic testimony. But Davis did not make this argument in the trial court, so he must show plain error.[7]

---

[6] *See Kailukiak v. State*, 959 P.2d 771, 774-75 (Alaska App. 1998) (holding that it was error for a trial court judge to allow telephonic testimony without the consent of the defendant).

[7] *See Bergman v. State*, 874 P.2d 958 n.2 (Alaska App. 1994).

– 5 –                                                                 4899

Other than citing the Sixth Amendment of the United States Constitution and Article 1, Section 11 of the Alaska Constitution, Davis has provided no authority that supports his claim that the right to compulsory process includes the right to present a witness telephonically under circumstances where telephonic testimony is not permitted by the Criminal Rules. Furthermore, Davis has cited no authority showing that this purported error would be obvious to any competent judge.[8]

We conclude that Judge Hensley did not commit plain error when he ruled that Davis could not present Bennett's telephonic testimony over the State's objection.

*Was the court required to order the State to pay for a witness's travel?*

After the court had ruled that Davis could not present Bennett's telephonic testimony, Davis filed a motion to have the court or the State pay for Bennett's travel expenses from Nome to appear in person. Davis, who was represented by retained counsel at trial, claimed that he could not afford to pay Bennett's travel costs. The only authority relied on by Davis in the trial court was his right under Article 1, Section 11 of the Alaska Constitution "to have compulsory process for obtaining witnesses in his favor."

Judge Hensley denied the motion. Judge Hensley noted that he was unaware of any authority that authorized him to enter such an order. Furthermore, he ruled that Davis had not shown that he was indigent.

We are less certain than Judge Hensley that the court has no authority to pay the fees for a witness. Alaska Rule of Criminal Procedure 17(b) (which neither party cited) allows the clerk to issue a subpoena for a witness to appear without prepayment of any fee when a defendant is "financially unable to pay the fees of the witness." But

---

[8] *See Massey v. State*, 771 P.2d 448, 453 (Alaska App. 1989); *Carman v. State*, 658 P.2d 131, 137 (Alaska App. 1983); *Marrone v. State*, 653 P.2d 672, 675-76 (Alaska App. 1982).

that rule also requires the defendant to show his financial inability under the standards required by the Criminal Rules.

Criminal Rules 39 and 39.1 describe the factors a court must consider when deciding whether a defendant is indigent and eligible for court-appointed counsel. These factors include a defendant's expected income, cash, assets readily convertible to cash, credit, and borrowing ability.

Here, Davis's motion provided no insight into any of those factors, nor did the motion cite any authority other than the provision of Article 1, Section 11 that entitled him to compulsory process for obtaining witnesses in his favor. He indicated that he did not have the funds to pay for the witness's travel costs but did not discuss any of the factors we mentioned above. Judge Hensley found that Davis had not shown that he was indigent.

We conclude that Judge Hensley did not abuse his discretion when he concluded that Davis had not shown that he was indigent. Davis's motion made a bare claim that he was not able to pay the cost of Bennett's travel. This bare claim was an inadequate basis for Judge Hensley to examine Davis's financial condition and conclude that he was indigent. Therefore, even if Judge Hensley had the power to order the court system or the State to pay for Bennett's travel expenses, an issue we do not address, he did not abuse his discretion when he concluded that Davis had not shown that he was indigent. Therefore, Judge Hensley did not abuse his discretion when he denied Davis's motion.

*Conclusion*

The judgment of the superior court is AFFIRMED.